IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SMITA A. PATEL,

         Plaintiff,

    v.

LOUIS DeJOY, Postmaster General of
the UNITED STATES POSTAL
SERVICE,

         Defendant.

No. 19-cv-03331
19-cv-04336

Judge Franklin U. Valderrama

**MEMORANDUM OPINION AND ORDER**

Plaintiff Smita A. Patel (Patel), an Indian American, Hindu woman is employed by the United States Postal Service (the Postal Service). Patel brings two consolidated lawsuits[1] against Louis DeJoy,[2] Postmaster General of the Postal Service alleging employment discrimination, specifically claims for disability discrimination in violation of the Americans with Disability Act (ADA), 42 U.S.C. § 1201 *et seq.*; color, national origin, race, religion, and sex discrimination under Title VII of the Civil Rights Act; and color, national origin, and race discrimination under

---

[1]Case No. 19-cv-04336 was reassigned to the previously assigned judge based on relatedness to Case No. 19-cv-03331. R. 14. The Postal Service filed a summary judgment motion in only Case No. 19-cv-03331 as to Patel's discrimination claims alleged in both cases. *See* Mot. Summ. J.; 19-cv-04336 Dkt. 60. Accordingly, this Opinion resolves Patel's claims in both cases.

[2]When Patel filed this lawsuit, Megan J. Brennan was Postmaster General. Louis DeJoy has since replaced Megan Brennan as Postmaster General and is substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

42 U.S.C. § 1981. R. 1, Compl.[3] Before the Court is the Postal Service's motion for summary judgement pursuant to Federal Rule of Civil Procedure 56. R. 56, Mot. Summ. J. For the reasons stated below, the Court grants the motion for summary judgment in part and denies it in part.

### Background

### I.    Local Rule 56.1 Statements and Responses

As an initial matter, the Court must address Patel's response to the Postal Service's Local Rule 56.1 statements of material facts and Patel's purported statement of additional material facts. R. 61, Pl.'s Resp. DSOF; R. 62 at 10, PSOAF.[4] When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(L.R. 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acquisition Co., LLC v. AIP Prod. Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1(a)). The Local Rule 56.1 statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif.*

---

[3]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation. Because the summary judgment motion was fully briefed in Case No. 19-cv-03331, citations to the record refer to filings in that case. Any citations to filings in Case No. 19-cv-04336 will so state.

Patel also brought age discrimination claims under the Age Discrimination Employment Act. Compl. at 3; 19-cv-04336 Dkt. 1 at 3, 11. However, Patel voluntarily dismissed her age discrimination claims. R. 50; 19-cv-04336 Dkt. 55; *see also* R. 60-1, Ex. 3, Patel Dep. at 91.

[4]Citations to the parties' Local Rule 56.1 Statements of Material Facts are identified as follows: "DSOF" for the Postal Service's Statement of Undisputed Facts (R. 58); "Pl.'s Resp. DSOF" for Patel's Response to the Postal Service's Statement of Undisputed Facts (R. 61); and "PSOAF" for Patel's Statement of Additional Facts (R. 62 at 10).

*Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). Under Local Rule 56.1(b) and (e), the nonmovant must counter with a response to the separate statement of facts, and either admit each fact, or, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(2)–(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.*; *see Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."); *see also Daniels v. Janca*, 2019 WL 2772525, at *1–2 (N.D. Ill. July 2, 2019). If the non-moving party asserts additional facts not included in the moving party's statement of facts, the non-moving party is to file a statement of additional material facts "that attaches any cited evidentiary material not attached to the [moving party's statement of facts] or the non-moving party's response [thereto]." N.D. Ill. Local R. 56.1(b)(3). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019). Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts. "*Id.* at 415.

The Local Rule 56.1 requirements apply to *pro se* litigants. *See Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[T]he Supreme Court has made clear that even *pro se* litigants must follow rules of civil procedure.") (citing *McNeil v.*

*United States*, 508 U.S. 106, 113 (1993)); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("[P]ro se litigants are not entitled to general dispensation from the rules of procedure or court imposed deadlines."); *Harris v. Coppes*, 2019 WL 2435847, at *1 (N.D. Ill. 2019) ("[Plaintiff's] *pro se* status does not excuse him from complying with Local Rule 56.1.") (collecting cases). As another court has advised Patel, "*[p]ro se* litigants get some latitude, but it only goes so far. There are not two sets of rules: one for pro se litigants, and another for everyone else. Everyone plays by the same Rules." *Patel v. Brennan*, 2021 WL 5937769, at *2 (N.D. Ill. Dec. 16, 2021).

As the Postal Service points out in its reply, many of Patel's denials to the Postal Service's statement of material fact fail to cite to any evidentiary material that controverts the asserted fact. R. 65, Reply at 2; *see* Pl.'s Resp. DSOF ¶¶ 5, 7, 9, 10, 12, 15, 16, 18, 25, 26, 29. Relatedly, although Patel often denies that the Postal Service's cited exhibit is accurate, she does not provide a citation to prove that denial. *See id.* ¶¶ 7, 9, 12. Additional denials cite to evidentiary material that does not controvert the Postal Service's statement of material fact. *See id.* ¶¶ 3, 13, 14, 24. Finally, many of Patel's responses contain improper argument. *See id.* ¶¶ 7, 8, 10, 11, 12, 13, 22, 23, 24, 28, 29.

As a result, where Patel did not respond offering admissible evidence of her own, the Court accepts as true the facts set forth in the Postal Service's Local Rule 56.1 statement "to the extent th[ose] facts [a]re supported by admissible and docketed evidence." *Kreg*, 919 F.3d at 411 (internal quotation marks omitted). The Court also will not consider any legal arguments or legal conclusions made in Patel's responses

to the Postal Service's statements of material fact. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008) ("[i]t is inappropriate to make legal arguments in a Rule 56.1 statement of facts"); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (collecting cases disregarding or affirming the decision to disregard argumentative statements of fact).

Finally, Patel did not file a separate statement of additional material facts, but rather included a section of her response brief stating that she "would like to enter Exhibits D, E, and F for additional facts." PSOAF. There are two problems with this request. First, as stated above, a party's Local Rule 56.1 statement must a consist of a short statement of undisputed material facts and cite to specific ages or paragraph numbers of the documents and materials in the record. *See ABC Acquisition Co.*, 2020 WL 4607247, at *7 (citing N.D. Ill. Local R. 56.1(a)). Citations to three exhibits, consisting of approximately 680 pages, "for additional facts," does not comply with that rule. The Seventh Circuit has repeatedly held that district courts "are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003). Second, evidence supporting or opposing summary judgement must be admissible if offered at trial, except that depositions and other written testimony can substitute for live testimony. *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 460 (7th Cir. 2014). That is, at summary judgment, a court may consider properly authenticated and admissible documents or exhibits. *Woods v. City of Chicago*, 234 F.3d 979, 988–89 (7th Cir. 2000). Under Federal Rule of Evidence

901(a), to authenticate an item of evidence, the proponent "must produce evidence sufficient to support a finding that the evidence is what the proponent claims it is." *United States v. Jackson,* 940 F.3d 347, 351 (7th Cir. 2019) (quoting Fed. R. Evid. 901(a)). Therefore, the Court will not consider Exhibits D, E, and F in their entirety as providing additional facts in support of Patel's opposition to summary judgment. However, to the extent that Patel has properly cited and authenticated those exhibits or any others in support of her responses to the Postal Service's statements of material facts, the Court will consider them.

## II. Material Facts

The following facts are set forth favorably to Patel, the non-movant, as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 937 (7th Cir. 2003). While the Court draws all reasonable inferences from the facts in Patel's favor, the Court does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015) (citation omitted); *see also Knopick v. Jayco, Inc.*, 895 F.3d 525, 527 (7th Cir. 2018) (citation omitted) ("Given this summary judgment lens, we do not vouch for the objective truth of all of these facts."). This background section details all material undisputed facts and notes where facts are disputed, to the extent the disputed facts are supported by record evidence. As noted above, *see supra*

6

Background Section I, the Court will not consider denials to statements of material fact where such denials are not supported by evidence.

Patel, an Indian American, Hindu woman with a knee injury and prior EEO activity[5] began working for the Postal Service in 1995. Pl.'s Resp. DSOF ¶ 1. Patel worked at the Postal Service's Palatine Processing and Distribution Center as a supervisor of distribution operations. *Id*. As a supervisor, Patel managed her team of clerks' and mail handlers' work assignments, handled timekeeping, checked the mail, and took care of grievances. *Id*. ¶ 2. At all times relevant to Patel's claim in Case No. 19-cv-03331 (June 29, 2012 through January 24, 2013), Patel reported to Brenda Valentine, acting manager of distribution operations, who reported to Charles Sciurba, acting plant manager. DSOF ¶¶ 3, 31. Patel denies that she reported to Valentine and cites to a 2009 document that shows that she reported to Michelle Davis (Davis). Pl.'s Resp. DSOF ¶ 3. However, Patel admits that the relevant period for her claim in Case No. 19-cv-03331 is June 2012 through January 2013 (Pl.'s Resp. DSOF ¶ 31) and, so the 2009 document does not controvert the Postal Service's evidence showing that Davis retired in 2012 (DSOF ¶ 3 (citing R. 60-2, Exh. 10 at 115)). At all times relevant to Patel's claim in Case No. 19-cv-04336 (dates within the period between July 6, 2015 and April 4, 2016), Patel reported to various managers

---

[5]Although the term "prior EEO activity" is not defined, as another court found in granting summary judgment to the Postal Service in another case brought by Patel, the Court takes this to mean that Patel has made complaints about her workplace at other times. *Patel v. Brennan*, 2021 WL 5937769, at *4 (N.D. Ill. Dec. 16, 2021); *see also* DSOF ¶ 8 (referencing Patel's "prior EEOC complaints"); *id.* ¶ 30 ("During [Patel's] tenure, she filed EEO complaints.").

depending on her assigned shift, who reported to Plant Manager Quintin Mayberry (Mayberry). Pl.'s Resp. DSOF ¶¶ 4, 31.

Beginning in 2008, Patel was barred from entering the attendance office where employee files were kept because she had accessed personnel files of other employees and copied them for her personal use. DSOF ¶ 12. Although Patel denies that she was ever barred from the attendance office and that she was ever accessed any employee file, she does not cite to any evidence in support of her denials. Pl.'s Resp. DSOF ¶ 12. Accordingly, the Court accepts the Postal Service's supported statement of fact.

In 2011, Patel injured her knee and was off work from June 2011 through May 2012. DSOF ¶ 5. When Patel returned in May, she supervised on the first floor for about a month within her doctor's restrictions. *Id*. Again, Patel disputes these facts without citing to any evidence, so the Court accepts the Postal Service's version of events. Pl.'s Resp. DSOF ¶ 5.

In late June 2012, Patel's doctor sent new restrictions, including no excessive twisting, bending, sitting, or standing; no kneeling or squatting; and frequent breaks. Pl.'s Resp. DSOF ¶ 6. The Postal Service asserts that it did not have work for Patel given her restrictions and sought clarification from her doctor, including the need for frequent breaks. DSOF ¶ 7. Patel disputes this and maintains that there was work available at the facility. Pl.'s Resp. DSOF ¶ 7. Patel cites to evidence that she provided doctors notes to the Postal Service; however, that fact is not inconsistent with the Postal Service seeking clarification from her doctor based on the notes provided. *Id*. (citing R. 60-2, Exh. 10 at 118). Patel does not cite to any other evidence

8

in support of her denials. *Id.* It is undisputed that Patel did not return to work for several months, although Patel disputes, without citing to evidence, that there was available work with her restrictions. Pl.'s Resp. DSOF ¶ 9.

In January 2013, Patel was referred to the vocation rehabilitation program. DSOF ¶ 10. The Postal Service maintains that through this program, a light duty position was identified for Patel. *Id.* Patel, on the other hand, disputes that the limited duty position was offered through vocational rehabilitation and insists the position already existed; again, she offers no evidence in support of this contention. Pl.'s Resp. DSOF ¶ 10. Patel accepted the position. DSOF ¶ 10.

Patel returned to work in 2013. Pl.'s Resp. DSOF ¶ 13. Once back at work, Patel wrote emails to the new Plant Manager Mayberry, manager Jill Dewey (Dewey), and supervisor Shaun Weathers. Pl.'s Resp. DSOF ¶ 13. Patel was upset about something that happened on the workroom floor. *Id.* ¶ 13. Management deemed the emails abusive and inappropriate. *Id.* ¶ 13. Patel denies that the emails were threatening and states that in her culture, this is the way she writes emails; as stated above, such argument is inappropriate in a Local Rule 56.1 statement or response, so the Court disregards Patel's denials. Pl.'s Resp. DOSF ¶ 13. That said, the evidence in the record reflects that Patel disagrees that the emails were inappropriate, unprofessional, and abusive. R. 60-1, Exh. 3 at 189.

Patel worked overtime hours without permission. DSOF ¶ 14. Additionally, when she arrived, Patel would not inform a manager that she was there and available for assignments. *Id.* In response to this conduct, on July 6, 2015, at approximately

9:00 a.m., Mayberry, manager Ricky Hilliard and labor-relations specialist Patricia Carreno met with Patel. *Id.* ¶ 15. At that meeting, Mayberry told Patel that she could not work overtime without permission and reminded her that she cannot enter the attendance office. *Id.* ¶¶ 15–16. Mayberry also told Patel to stop writing inappropriate, unprofessional, and abusive emails to postal employees. *Id.* ¶ 16. Patel, following the meeting, again wrote inappropriate emails. *Id.* Patel disputes each of these facts, but cites to no evidence in support of her denials, so the Court accepts the Postal Service's version of events. Pl.'s Resp. DSOF ¶¶ 14–16.

The same day, after the additional emails were discovered, Mayberry called Patel in for another meeting. DSOF ¶ 17. Although the Postal Service maintains that Patel refused to attend the meeting, Patel, citing to the EEO Investigation Report, denies that she refused to attend the meeting, but instead insisted that her NAPS representative also be present at the meeting. Pl.'s Resp. DSOF ¶ 17 (citing R. 63, Exh. E at 371). Therefore, the Court accepts Patel's version of events. However, Patel does not dispute that she did not talk to Mayberry. *See id.* When Patel did not speak to Mayberry, Mayberry put Patel in "emergency placement." DSOF ¶ 18. Mayberry called the police to escort Patel out of the facility after Patel refused to leave. *Id.* Patel denies that Mayberry told her to leave the building, but cites to no evidence. Pl.'s Resp. DSOF ¶ 18. Due to her "emergency placement," Patel did not work for two months but was paid for that time period. DSOF ¶ 18. Also on July 6, 2015, Patel complained to manager Dewey that an employee had made an offensive comment about an Indian female employee, which the employee denied. Pl.'s Resp. DSOF ¶ 19.

Patel made the complaint after that employee had reported to management that Patel had clocked in hours before her shift. *Id.* Based on all of the events of July 6, 2015, when Patel returned to work several months later, Mayberry charged Patel with failure to follow instructions and insubordination. DSOF ¶ 20. Patel disputes this statement of facts but cites to no evidence in support. Pl.'s Resp. DSOF ¶ 20. Patel received a letter warning in lieu of a 14-day suspension and did not lose any pay or benefits. Pl.'s Resp. DSOF ¶ 21. The warning letter was removed from Patel's file after two years. *Id.*

When Patel returned to work a couple of months later, she returned to Tour 1, because there was a need on that shift and her detail to Tour 2 had ended.[6] DSOF ¶ 20 (citing 60-3, Exh. 28 at 27). Patel denies that there was a need on Tour 1 and that there remained a need on Tour 2. Pl.'s Resp. DSOF ¶ 20. In support, Patel cites to assignment orders showing that Shuna Sims (Sims), a supervisor of distributor operations, was assigned to daytime shifts between July 25, 2015 and September 2, 2016. *Id.* (citing R. 64, Exh. M). However, Patel cites to nothing supporting her position that Sims or another supervisor should have been assigned to Tour 1 in place of Patel, or that there was no need for Patel to work Tour 1. *Id.*

In January 2016, Mayberry offered Patel a detail (a temporary assignment when there is a need) to Tour 2 with Friday and Saturday off. DSOF ¶¶ 22, 25. Patel, however, wanted a detail with Saturday and Sunday off. DSOF ¶ 25. Nevertheless, Patel took the assignment. *Id.* Patel disputes these facts but again provides no

---

[6]Although the parties do not explicitly define the tours, the Court understands Tour 1 to be the night shift and Tour 2 to be the day shift. *See* DSOF ¶¶ 25–26; Pl.'s Resp. DSOF ¶ 22.

evidence in support, so the Court accepts them as true for purposes of the summary judgment motion. Pl.'s Resp. DSOF ¶¶ 22, 25.

On February 11, 2016, Patel presented a doctor's note with additional restrictions that she needed to be seated for one week. DSOF ¶ 26. Mayberry moved Patel to Tour 1, because of the absence of seated work available on Tour 2. *Id*. Patel accepted the temporary assignment. *Id*. Yet again, Patel does not cite to evidence in support of her denials, so the Court accepts these facts as true. Pl.'s Resp. DSOF ¶ 26.

In March 2016 Patel returned to Tour 1, her designated shift. DSOF ¶ 27. Permanent positions were posted for Tour 2 and 3. *Id*. The Postal Service maintains that Patel did not properly apply for those positions and the positions were subsequently filled by employees who had applied. *Id*. (citing, among other documents, R. 60-3, Exh. 35 at 2). Patel disputes that she did not apply for the positions, and points to multiple emails that she sent to Mayberry and Robert Prahl, another manager, requesting reassignment to Tour 2. Pl.'s Resp. DOSF ¶ 27 (citing R. 63, Exh. E at 512–13, 515–16). However, the evidence presented by Patel does not support her position that the Postal Service followed the incorrect procedures by requiring applicants to the permanent Tour 2 and 3 positions to apply via the eCareer platform, which she did not do. *See id*.

On March 30, 2016, Patel was directed to clock out after 10 hours of work, per the 10-hour limit, but she insisted she was going to work 12 hours. DSOF ¶ 28. Patel, without citing to any evidence, denies any 10-hour limit. Pl.'s Resp. DSOF ¶ 28. Patel

was given a pre-disciplinary interview (a discussion about an issue that is not considered discipline) about her failure to follow instructions. DSOF ¶ 28.

Patel last worked for the Postal Service in April 2019, when she was injured and has not been released to work. Pl.'s Resp. DSOF ¶ 30. During her tenure with the Postal Service, Patel has filed EEO complaints other than the complaints underlying the claims raised in Case No. 19-cv-03331 and 19-cv-04336. *Id.*

Patel filed an EEO complaint as to the claims in Case No. 19-cv-03331 on October 13, 2012. Compl. Exh. 1, EEOC Decision at 2. After an investigation, on July 12, 2017, an EEOC Administrative Judge (AJ) issued a decision finding there was no discrimination, and the Postal Service issued a final order adopting the AJ's finding of no discrimination eight days later. *Id.* at 3. Patel appealed to the EEOC's Office of Federal Operations, which affirmed the Postal Service's final order on February 12, 2019. *Id.* at 3–4. Patel filed an EEO complaint as to the claims in Case No. 19-cv-04336 on October 26, 2015. 19-cv-04336 Dkt. 1, Exh. 1, EEOC Notice of Final Action at 1. An EEOC AJ issued a decision on March 21, 2019, finding that Patel was not the victim of illegal discrimination. *Id.* The Postal Service issued a final order adopting the AJ's finding on April 4, 2019. *Id.*

Patel subsequently filed *pro se* lawsuits against the Postal Service, which are based on two of Patel's EEO complaints claiming a total of 17 alleged adverse actions amounting to discrimination based on her race, color, religion, gender, national origin, disability, and retaliation. Case No. 19-cv-03331 has one accepted issue

(number one below) and Case No. 19-cv-04336 has 16 accepted issues (numbers 2 through 17 below):

1. Beginning on June 29, 2012, and continuing to January 24, 2013, management told her not to return to work until notified due to her medical restrictions;
2. On July 6, 2015, the plant manager accused her of going through employee files, barring her from the attendance office;
3. On July 6, 2015, the plant manager told her that she could not work overtime without permission;
4. On July 6, 2015, the plant manager told her to stop writing emails to management;
5. On July 6, 2015, the plant manager had the police escort Patel from the building;
6. On an unspecified date, someone made a comment about an Indian female that offended Patel and management took no action;
7. On or about August 29, 2015, Patel was moved to Tour 1;
8. Starting July 10, 2015, Patel was denied details;
9. On September 29, 2015, Patel received a letter of warning in lieu of a 14-day suspension;
10. On an unspecified date, Patel was detailed to Tour 2 with Friday and Saturdays off;
11. On unspecified dates, Patel was not given overtime;
12. On January 7, 2016, Patel received a decision letter of warning in lieu of a 14-day suspension;
13. On unspecified dates, the plant manager sent Patel home after her doctor note indicated "seated work with other restrictions"; On February 11, 2016 the plant manager reassigned Patel to Tour 1;
14. On or around March 9, 2016, Patel was told to return to Tour 1;
15. On or about March 30, 2016, Patel was given a pre-disciplinary interview;
16. On February 22, 2016, March 9, 2016, and March 28, 2016, Patel's requests for reassignment to Tour 2 were denied;
17. On or about April 4, 2016, Patel was given a pre-disciplinary interview.

DSOF ¶ 31; Pl.'s Resp. DSOF ¶ 31.

Patel's remaining claims in the two lawsuits include color, national origin, race, religion, and sex discrimination claims under Title VII of the Civil Rights Act, color, national origin, and race discrimination under Section 1981, and a claim under

the American with Disabilities Act (ADA) based on the above actions. The Postal Service's motion for summary judgment is before the Court. Mot. Summ. J.

## Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Parker v. Brooks Life Sci., Inc.*, 39 F.4th 931, 936 (7th Cir. 2022) (internal quotation marks and citations omitted). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d

697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## Analysis

In both cases, Patel alleges that the Postal Service discriminated against her on the basis of her race, color, religion, gender, national origin, disability, and retaliation. She also alleges that the Postal Service failed to accommodate her disability. Because it is not always clear which form of discrimination Patel claims she suffered in each of the seventeen adverse actions listed above, the Court first lays out the legal standards for each form of discrimination, and then applies those standards to the alleged adverse actions, as relevant.

## I. Legal Standards of Discrimination

### A. ADA

The "ADA prohibits employers from discriminating against qualified individuals due to a disability." *Rowlands v. United Parcel Serv.-Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) (citation omitted). A plaintiff may "show discrimination in either of two ways: by presenting evidence of disparate treatment or by showing a failure to accommodate." *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

#### 1. Disparate Treatment

Traditionally, to establish an ADA disparate treatment claim, a plaintiff can "proceed under either the direct or indirect method of proof." *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015). Under the direct method, a plaintiff must

16

show that: (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without a reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse action was caused by her disability. *Kurtzhals v. City of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020). Under the indirect method, the plaintiff must first "establish[ ] a prima facie case by showing: (1) that [she] is disabled under the ADA; (2) that [she] was meeting [her] employer's legitimate expectations; (3) that [she] suffered an adverse employment action; and (4) that similarly situated employees without a disability were treated more favorably." *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 684 (7th Cir. 2014). In recent years, the Seventh Circuit has moved away—while not abandoning completely—these two methods, instead instructing that, "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The ultimate question is whether there is evidence that "would permit a reasonable factfinder to conclude that the plaintiff's [disability,] race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.*

"If an ADA plaintiff establishes a prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the employment decision. If the employer succeeds, then the burden reverts to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 839 (7th Cir. 2012); *see also*

*Khowaja v. Sessions*, 893 F.3d 1010, 1014 (7th Cir. 2018) (clarifying that *Ortiz* did not alter the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). This is referred to as the *McDonnell Douglas* burden-shifting method of proof. *See, e.g.*, *Khowaja*, 893 F.3d at 1014. Pretext is defined as "a dishonest explanation, a lie, rather than an oddity or an error. " *Sweatt v. Union Pacific R. Co.*, 796 F.3d 701, 709 (7th Cir. 2015). To establish pretext, the plaintiff must show either that the employer was motivated by a discriminatory reason or that the proffered reason is "unworthy of credence." *Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 675–676 (7th Cir. 2003).

### 2. Failure to Accommodate

To survive summary judgment on a failure to accommodate claim, the plaintiff must establish that: (1) she is a qualified individual with a disability; (2) her employer was aware of her disability; and (3) her employer failed to reasonably accommodate that disability. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015). If the plaintiff establishes these elements of the prima facie case, the burden shifts to the employer to prove that the requested accommodation would impose an undue hardship. *Ford v. Marion Caty. Sheriff's Office*, 942 F.3d 839, 850 (7th Cir. 2019). The Seventh Circuit "has held that the *McDonnell Douglas* burden-shifting method of proof is unnecessary and inappropriate in a failure-to-accommodate claim." *Mlsna v. Union Pac. R.R. Co.*, 975 F.3d 629, 638 (7th Cir. 2020) (internal quotation marks and citation omitted). While evidence of pretext may be

relevant in such a case, a pretext analysis need not be part of the reasonable accommodation evaluation. *Id.*

### 3. Retaliation

To succeed on a claim for retaliation under the ADA, a plaintiff must demonstrate that: "(1) [he] engaged in protected activity, (2) [his] employer took an adverse action against [him], and (3) there was a 'but for' causal connection between the two." *Parker*, 39 F.4th at 936 (internal quotations and citations omitted). As with a disparate impact disability discrimination claim, if the plaintiff establishes a prima facie case of retaliation, then the Court applies the *McDonnel Douglas* burden-shifting analysis. *See Koty v. DuPage Cnty., Illinois*, 900 F.3d 515, 519 (7th Cir. 2018).

### B. Title VII and Section 1981

### 1. Discrimination

"Title VII prohibits an employer from 'discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (quoting 42 U.S.C. § 2000e-2(a)(1)). A plaintiff establishes a *prima facie* case of Title VII discrimination by establishing that she: (1) is a member of a protected class, (2) is performing her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated less favorably than at least one similarly-situated [non-protected class member]." *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005). As with disparate impact disability discrimination claims, the Seventh Circuit has done away with

separating "direct" or "indirect" evidence, but rather, "the singular question for the district court is whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Igasaki*, 988 F.3d at 957 (internal quotation marks and citation omitted). Also similar to disparate impact disability discrimination claims, if a plaintiff establishes a prima facie case of discrimination under Title VII, the Court should apply the *McDonnell Douglas* burden-shifting framework. *See id.* The Court applies the same analysis to Section 1981 claims as it does to Title VII claims. *See Sims v. A-Alert Exterminating Servs., Inc.*, 2014 WL 948650, at *4 (N.D. Ill. Mar. 11, 2014) (collecting cases).

An adverse employment action under Title VII is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008) (internal quotations and citation omitted).

## 2. Retaliation

"To make out a *prima facie* case for retaliation under Title VII, a plaintiff must show that a reasonable jury could find that (1) [she] engaged in statutorily protected activity; (2) [her] employer took a materially adverse action against [her]; and (3) the adverse action was caused by the protected activity." *Miller v. Chi. Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) (internal citation omitted). If a plaintiff establishes a prima facie case of retaliation, the Court then engages in the *McDonnell Douglas*

burden-shifting analysis. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).

## II.     Case No. 19-cv-03331

Patel's first discrimination claim, alleged in Case No. 19-cv-03331, stems from the time period between June 2012 and January 2013 when the Postal Service could not find work for her due to her medical restrictions and lack of clarification from Patel's doctor. *See* DSOF ¶ 31(1); Pl.'s Resp. DSOF ¶ 31. The Postal Service argues that Patel's claim fails because (1) Patel cannot establish an appropriate comparator, so her prima facie case fails, and (2) the Postal Service had a legitimate, non-discriminatory reasons for its actions, and Patel cannot establish that those reasons are pretext for discrimination. R. 57, Memo. Summ. J. at 9–10.

### A. Disparate impact discrimination based on color, national origin, race, religion, and sex

The Postal Service relies primarily on pre-*Ortiz* cases to argue that Patel's discrimination claims based on the Postal Service's failure to find her work fails because Patel has not shown another similarly situated individual who was not in the protected class was treated more favorably than Patel was. Memo. Summ. J. at 10–11 (citing, among other cases, *Burks v. Wisc. Dep't of Trans.*, 464 F.3d 744, 750–51 (7th Cir. 2006); *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007); *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)). The Court analyzes whether Patel's case survives under the indirect method that requires the similarly situated employee showing, as well as under the holistic *Ortiz* approach. *See, e.g., Igasaki*, 988 F.3d at

21

958 (analyzing Title VII discrimination claim under indirect method and under *Ortiz*); *Jasnic v. Bisco, Inc.*, 2022 WL 971606, at *4 (N.D. Ill. Mar. 31, 2022).

The Court agrees with the Postal Service that Patel does not identify similarly situated employees who received more favorable treatment. As the Postal Service points out, while Patel asserts that all Black, Hispanic, and white employees, who were injured on the job were offered jobs within their restrictions and chosen days off, Patel must specifically identify comparators. Memo. Summ. J. at 11 (citing *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845–46 (7th Cir. 2007) (finding that the plaintiff must show that "members of the comparison group are sufficiently comparable to her to suggest that she was singled out for worse treatment")); Resp. at 4 ("all the injured employees in the USPS are my comp[aritor]"). "The similarly-situated inquiry is a flexible one, but [courts] frequently consider whether the employees in question had the same job description, were subject to the same standards, had the same supervisor, and had comparable experience, education, and other qualifications." *Poullard v. McDonald*, 829 F.3d 844, 855 (7th Cir. 2016). Patel testified that her proffered group of comparators had different supervisors, and she provided no evidence as to their religion, national origin, medical restrictions, or prior EEO complaints. Memo. Summ. J. at 11 (citing R. 60-1, Exh. 3 at 62 ("We have all different supervisors."); *id.* at 73–74 (Patel is unsure of the religions of proffered comparators).

In response, Patel points to two individuals she named during her deposition as comparators because they were both on light duty: Virgil Lawrence (Lawrence)

and Jimmy Brown (Brown). Resp. at 4. But as the Postal Service argues in reply, both Lawrence and Brown reported to different supervisors than Patel, and Brown worked in maintenance and retired in 2008—years before the alleged discrimination. Reply at 4. Apart from arguing that Lawrence ultimately reported to the plant manager, Patel proffered no other evidence as to how Lawrence is similarly situated to Patel. And importantly, Patel put forth no evidence as to Lawrence or Brown's religion, national origin, color, race, or prior protected activity. *Id.* (citing R. 60-1, Exh. 3 at 65, 74–75, 90–91). Patel has failed to establish Lawrence or Brown as appropriate comparators for any of her discrimination claims based on race, color, religion, gender, national origin, disability, and retaliation. Patel also names the following people as comparators: "George Webber, Nicole Leak, Bonne Knowles, Mary Ann Gocha Richard Nielson, . . . Jeff or Richard Chine, . . . Irvin Mathis, Lula Bolden, James Jefferson, Michelle Oliver, Susan Polka, Waymond Washington, [and] Sims Shauna." Reply at 4. She claims that Jeff or Richard Chine has the same supervisor, but she identifies no other similarities to herself, including job title or duties. *See id.* Apart from identifying Lula Bolden as black, Patel did not identify these employees' race, color, national origin, religion, or prior protected activity; nor did she identify Sims' title. *Id.* at Although these individuals are referenced in Patel's response to the Postal Services' statement of facts, she cites to no evidence in support of these individuals being similarly situated. *See* Pl.'s Resp. DSOF ¶ 7. By failing to produce evidence establishing a similarly situated employee from which the Court can draw

a comparison, Patel has failed to assert a prima facie case under the indirect method. *See Igasaki*, 988 F.3d at 958.

Patel's discrimination claims also fail under *Ortiz*, which requires the Court to determine "whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki*, 988 F.3d at 958. Patel argues that the Postal Service discriminated against her and promoted "favoritism and buddy business." Resp. at 3. But apart from baldly claiming that the Postal Service is lying about discriminating against her by not allowing her to work between June 2012 and January 2013, Patel fails to point to any evidence in the record that the Postal Service impermissibly made that decision based on her race, color, religion, gender, national origin, disability, and retaliation. *See generally* Resp. Accordingly, Patel does not meet her burden of establishing a prima facie case of discrimination based on disparate treatment under the ADA, Title VII, and Section 1981. *See Hoppe*, 692 F.3d at 839; *Farrell*, 421 F.3d at 613. Because the Court finds that Patel has presented insufficient evidence to establish a prima facie case for discrimination, the Court need not address the Postal Service's argument that it had a legitimate nondiscriminatory reason for the employment decision. *See Hoppe*, 692 F.3d at 839.

## B. Failure to Accommodate

Patel also alleges a claim under the ADA that the Postal Service failed to accommodate her disability by not finding a reasonable accommodation for her to be able to work between June 2012 and January 2013. *See* Compl. at 4–5 (checking off the box that defendant "failed to reasonably accommodate the plaintiff's disabilities"

on the form complaint and alleging, "[t]he mgt instructed to me, do not return to work until notified. . . . mgt did not accommodate me"). The Postal Service does not address this claim in its summary judgment brief. *See* Memo. Summ. J. To the extent the Postal Service intended to address all of Patel's ADA claims in its summary judgment motion, as stated above, *see supra* Analysis Section I.A.1–2, although there are some overlapping elements of claims for disparate impact discrimination and failure to accommodate, there are also distinct elements. The two elements of the disparate impact discrimination claim attacked by the Postal Service—lack of comparators and legitimate non-discriminatory reasons for the employment decision—are not required elements of a failure to accommodate claim. *See, e.g.*, *Mlsna*, 975 F.3d 638. Accordingly, the Court finds that the Postal Service has not sought summary judgment on Patel's ADA failure to accommodate claim, and as such that claim survives for now.

### C. Retaliation

To the extent Patel attempts to raises a retaliation claim based on the filing of an EEO complaint, that issue was not raised in Patel's complaint. Although Patel checked off the "retaliation" box on the form complaint, she did not include any allegations about retaliation in response to the filing of an EEO complaint. Compl. at 4. As the judge in another case filed by Patel recently stated, a complaint must "include enough factual details to give the defendant fair notice of the claim." *Patel*, 2021 WL 5937769, at *17 (citing *Hooper*, 804 F.3d at 851). A plaintiff cannot advance a new theory of liability in her response to a summary judgment motion. *Id.*

(collecting cases). Therefore, to the extent Patel attempts to proceed on a retaliation claim based on the filing of an EEO complaint, the Court finds that Patel did not give fair notice to the Postal Service of that theory, and therefore the Court will not consider any such claim. *See id.*

Even so, the Court agrees with the Postal Service that, to the extent Patel claims retaliation based on EEO complaints filed in 2010 and 2008 (*see* 60-1, Exh. 3 at 106), the two and four year gaps between those complaints and the Postal Services' failure to find work for Patel in June 2012 is too attenuated to be suspicious on its own. Memo. Summ. J. at 13 (citing, among other cases *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918–19 (7th Cir. 2000) (three-month period was too long to raise an inference of discrimination)). And, to the extent Patel attempts to base a retaliation claim on the filing of a 2014 EEO complaint, *see* Resp. at 2–3, protected activity that occurred after the allegedly adverse action cannot support a retaliation claim.

### III.   Case No. 19-cv-04336

The Postal Service argues that it is entitled to summary judgment on the sixteen claims of discrimination raised in Case No. 19-cv-04336 because: (1) Patel cannot show an adverse action; (2) Patel cannot point to any appropriate comparator who was treated better than she was; and (3) the Postal Service had a legitimate, non-discriminatory reason for its actions. Memo. Summ. J. at 13–14. The Court

begins with whether any of Patel's allegations rise to the level of an adverse action and addresses the Postal Services' other arguments, as appropriate.

In a discrimination case, notes the Postal Service, a materially adverse employment action is one which visits upon the plaintiff "a significant change in employment status." *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014). Such changes can involve the employee's salary, her career prospects, or changes to work conditions that include termination, a less distinguished title, a material loss of benefits, humiliating, unsafe, unhealthy, or otherwise significant negative alteration in the workplace. *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007); *Atanus v. Perry*, 520 F.3d 662, 677–78 (7th Cir. 2008). Although an adverse action "need not be quantifiable in terms of pay or benefits," certain actions are clearly not "materially adverse," including "petty slights or minor annoyances," *Burlington N. & Santa Fe Ry. Co., v. White*, 548 U.S. 53, 68 (2006)), or acts that are no more "than a mere inconvenience or an alteration of job responsibilities." *Atanus*, 520 F.3d at 677–78. As for a retaliation claim, a materially adverse action is one that would dissuade a reasonable employee from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry.*, 548 U.S. at 71. The Court evaluates Patel's sixteen claims in turn.

## A. July 6, 2015 Claims

Many of Patel's claims relate to events that took place on July 6, 2015 (issue nos. 2–6, 9): (2) the plant manager reminder Patel she could not enter the attendance office, (3) a manager told Patel she could not work overtime without permission, (4)

a manager directed Patel to stop writing emails that management deemed abusive (Patel disagrees with that characterization, but not with the fact that management viewed them as abusive), (5) the manager had police escort Patel from the building, (6) management took no action in response to a comment another employee made about an Indian female, (9) Patel received a letter of warning instead of a 14-day suspension for the events of July 6, 2015. DSOF ¶ 31; Pl.'s Resp. DSOF ¶ 31.

The Court agrees with the Postal Service that issue nos. 2, 3, and 4 are simply reminders of appropriate conduct and workplace policies, not material changes to Patel's position. Memo. Summ. J. at 15. As to the letter warning that Patel received (issue no. 9), the letter was removed from her file after two years and did not impose discipline. *Id.* (citing, among other cases, *Atanus*, 520 F.3d at 675 (letter admonishing employee but not disciplining him is not considered an adverse employment action); *Krause v. City of La Crosse*, 246 F.3d 995, 1000 (7th Cir. 2001) (there is "firmly established circuit precedent that a letter of reprimand is not an adverse employment action unless the letter is accompanied by some other action, such as job loss or demotion")). Regarding Patel's claim about another employee making a harassing statement about an Indian female employee, to which management took to action (issue no. 6), the Court finds that the record shows that management did in fact act. Management obtained statements from the employee who allegedly made the statement and from Patel. Memo. Summ. J. at 15 (citing R. 60-3, Exhs. 26–27). Based on management's investigation, it could not substantiate Patel's accusation. *Id.* So, even though management's action did not secure the result Patel hoped for, the

evidence belies her claim that management took no action in response to an allegedly discriminatory statement. *Id.* (citing R. 60-3, Exhs. 27, 37 at 4, 6). Because these issues do not rise to the level of adverse actions, Patel cannot make out a prima facie case of discrimination under the ADA, Title VII, or Section 1981 and the Postal Service is entitled to summary judgment on issue nos. 2, 3, 4, 6, and 9.

The Court agrees with Patel, however, that there is at least a question of fact as to whether being escorted out of the building by police (issue no. 5) is a "humiliating" alteration in the workplace such that it constitutes an adverse employment action. *See* Resp. at 7. Still, the Court agrees with the Postal Service that Patel failed to connect that action to any of her protected characteristics (race, color, religion, gender, national origin, disability). Memo. Summ. J. at 20–21. Mayberry, who called the police to escort Patel after she refused to leave the facility, testified that he was not aware of Patel's religion, national origin, age, or disability. *Id.* at 21 (citing R. 60-3, Exh. 28 at 2–4). Without such knowledge, Mayberry could not discriminate or retaliate against Patel based on those categories. He also testified that his decisions were not based on Patel's race, color, religion, national origin, gender, age, disability, or prior EEO complaints. *Id.* (citing R. 60-3, Exh. 28 at 22–24). Rather, the Postal Service provided evidence of a legitimate reason for the decision: Mayberry called the police to escort Patel out of the building because she refused to leave. DSOF ¶ 18. As noted above, *see* Background, Patel denies that Mayberry told her to leave, but she cites to no evidence in support, so the Court accepts the Postal Service's version of events. Pl.'s Resp. DSOF ¶ 18. In response,

Patel argues that Mayberry acted against her because she filed an EEO complaint against her, and that "[h]e is not going to admit it." Resp. at 5. Such unsupported statements are insufficient to establish that Mayberry's explanation for calling the police was pretextual for discrimination. Because Patel provides no evidence of pretext, no reasonable jury could find that the Postal Service's stated reason for calling the police had no basis in fact, is not the real reason for calling the police, or that her conduct was insufficient to warrant it. *See Atanus*, 520 F.3d at 674. Accordingly, summary judgment is warranted on issue no. 5.

**B. Shift Assignments, Details, Overtime, and Patel's Restrictions**

The Court next turns to Patel's claims regarding shift assignment, details, overtime, and Patel's restrictions (issue nos. 7–8, 10–11, 13–14, 16): (7) In August 2015, Patel was moved to Tour 1; (8) Staring in July 2015, Patel was denied details; (10) On an unspecified date, Patel was detailed to Tour 2 with Friday and Saturdays off; (11) On unspecified dates, Patel was not given overtime; (13) On unspecified dates, Plant manager sent Patel home after her doctor note indicated "seated work with restrictions" and in February 2016, Patel was reassigned to Tour 1; (14) In March 2016, Patel was told to return to Tour 1; (16) In February and March 2016, Patel's requests for reassignment to Tour 2 were denied. DSOF ¶ 31; Pl.'s Resp. DSOF ¶ 31. In response, Patel did not substantively respond to the Postal Service's position that these claims do not constitute adverse actions and therefore has waived the issue. *See* Resp.; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Nonetheless, the Court agrees

with the Postal Service that the evidence shows that she received details and worked overtime. Memo. Summ. J. And failure to award Patel her first choice on days off is not a qualitative change in the terms or conditions of her employment. *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004).

Moreover, even if Patel's claims that she was forced to work Tour 1 night shifts instead of her preferred Tour 2 day shifts (issue nos. 7, 13–14, 16) were to constitute a "significant negative alteration in the workplace," those claims still fail. First, Patel cites to no evidence at all in support of any claim of discrimination for being moved to Tour 1 in August 2015, and fails to meet her burden of establishing a *prima facie* case of discrimination. *See* Resp.; Pl.'s Resp. DSOF; *Parker*, 39 F.4th at 936. And the Postal Service has produced uncontroverted evidence that: (1) Patel did not properly apply to the posted opening for Tour 2 (issue nos. 14, 16) and the Tour 2 opening was filled by someone who applied, Pl.'s Resp. DOSF ¶ 27; and (2) Mayberry moved Patel to Tour 1 after receiving her doctor's note with additional restrictions because of the absence of seated work on Tour 2 (issue no. 13) and Patel accepted the temporary assignment, Pl.'s Resp. DSOF ¶ 26. As stated above, Patel disputes these facts and insists that she did apply to the Tour 2 opening and that there was seated work available on Tour 2, but provides no evidence in support. Accordingly, she fails to produce any evidence that the Postal Service's legitimate explanation for these hiring or reassignment decisions were pretextual for discrimination and summary judgment is warranted on these claims. *See Atanus*, 520 F.3d at 674

To the extent Patel attempts to assert a failure to accommodate claim based on Mayberry sending her home after receiving a doctor's note requiring Patel to have seated work (issue no. 13), the Court finds that she has failed to adequately allege facts to put the Postal Service on notice of such a claim in her complaint in Case No. 19-cv-04336 (Dkt. 1). She checked the "fail to accommodate" box on the form complaint, but, unlike her claim in Case No. 19-cv-03331, she did not support that claim with any additional allegations, and as such it is waived. *See Hooper*, 804 F.3d at 851–52. And, even if she had properly put the Postal Service on notice of such a claim, it would fail because the uncontroverted evidence shows that in response to the new restrictions, Patel was provided a reasonable accommodation in that she was moved to Tour 1 where there was seated work available. Pl.'s Resp. DSOF ¶ 26.

## C. Warning Letters and Pre-Disciplinary Interviews

Finally, the Court addresses Patel's claims that the Postal Service discriminated against her by issuing an additional warning letter and conducting pre-disciplinary interviews with her (issue nos. 12, 15, 17): (12) In January 2016, Patel received a decision letter of warning instead of a 14-day suspension; (15) In March 2016, Patel was given a pre-disciplinary interview; and (17) In April 2016, Patel was given another pre-disciplinary interview. DSOF ¶ 31; Pl.'s Resp. DSOF ¶ 31. Neither party cites to evidence in their Local Rule 56.1 statements about the January 2016 decision letter of warning. *See* DSOF; Pl.'s Resp. DSOF. As previously discussed, Patel bears the burden of making a "showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden

32

of proof at trial." *Parker*, 39 F.4th at 936. Without pointing to any evidence, Patel has failed to make this showing and her claim must fail. Regardless, as noted above, a letter that warns but does not discipline an employee is not an adverse employment action. *See Atanus*, 520 F.3d at 675.

Similar to letters of warning, pre-disciplinary interviews, standing alone, do not constitute an adverse action. *See Sweeney*, 149 F.3d at 556 ("Absent some tangible job consequence accompanying [an employer's] reprimands, we decline to broaden the definition of adverse employment action to include them."); *Oest v. Illinois Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) (oral and written reprimands on their own are not an adverse employment actions); *see also Griffin v. Potter*, 356 F.3d at 829. Patel proffers no evidence showing that the March 2016 or April 2016 pre-disciplinary interview resulted in a "tangible job consequence." As such, the Court agrees with the Postal Service that summary judgment is warranted on the claims based on issue nos. 12, 15, and 17.

## Conclusion

For the foregoing reasons, the Postal Service's motion for summary judgment [56] is granted in part and denied in part. The Court enters summary judgment in favor of the Postal Service and against Patel on all claims in Case Nos. 19-cv-03331 and 19-cv-04336, except for Patel's ADA failure to accommodate claim brought in Case No. 19-cv-03331. In Case No. 19-cv-03331, by January 6, 2023, the parties are directed to file a status report indicating: (1) whether the parties would like a referral

to the Magistrate Judge for a settlement conference; (2) whether the Postal Service intends to move for summary judgment on Patel's failure to accommodate claim; (3) whether the parties consent to proceeding with trial before the Magistrate Judge, (4) whether the parties consent to a bench trial, (5) the anticipated number of days for trial (accounting for voir dire), (6) the expected number of witnesses; and (7) if the parties do not consent to proceeding before the Magistrate Judge, their availability for trial. Case no. 19-cv-04336 is terminated.

Dated: December 22, 2022

United States District Judge
Franklin U. Valderrama